Filed 3/15/22  Liberty Mutual Fire Ins. v. Vafi CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MEHRANGIZ VAFI,<br><br>    Defendant and Respondent. | B312094<br>(Los Angeles County<br> Super. Ct. No. 20STCP02362) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura A. Seigle, Judge.  Affirmed.

Law Offices of Wolf, O'Connor & Myers, Marjorie Motooka; Clyde & Co. US, Susan Koehler Sullivan, Brett C. Safford and Douglas J. Collodel for Plaintiff and Appellant.

Law Offices of Burg & Brock, Scott A. Kennedy and Craig D. Rackohn for Defendant and Respondent.

This appeal arises from an underinsured motorist arbitration between respondent Mehrangiz Vafi and her insurer, appellant Liberty

Mutual Fire Insurance Company (Liberty Mutual). Based on Vafi's automobile policy, the arbitration was limited to determining the damages that Vafi could recover from the underinsured motorist. The arbitration expressly omitted from consideration the scope of Liberty Mutual's coverage under the policy. The arbitrator issued an award in favor of Vafi for $335,983.42. Thereafter, Liberty Mutual tendered a check to Vafi for $271,335.66 to cover her UIM claim. Liberty Mutual arrived at that amount by deducting from the arbitration award offset credits for a third-party settlement that Vafi had reached with the underinsured motorist's insurer ($50,000), and medical expenses Liberty Mutual had paid under Vafi's medical payment coverage ($14,647.76).

When the parties disputed the amount of coverage, Liberty Mutual filed a petition in the trial court under Code of Civil Procedure section 1286.6,[1] to correct the arbitration award, and to confirm the award. Conceding issues of coverage were not subject to arbitration, Liberty Mutual nevertheless sought to correct the award with language clarifying that Liberty Mutual was entitled to the offsets it had claimed. The court denied Liberty Mutual's request to correct the arbitration award, and confirmed the award in a judgment. In doing so, the court found that Liberty Mutual had failed to provide any legal authority for the relief it sought, namely modifying an arbitration award by the judicial adjudication of an issue that was not arbitrated.

---

[1]     Unspecified statutory references are to the Code of Civil Procedure.

On appeal, Liberty Mutual contends the trial court erred by confirming the arbitration award without adding a provision to the award entitling Liberty Mutual the right to offset its coverage to Vafi. We conclude that the trial court correctly denied the petition to correct, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Pre-Arbitration Phase*

In December 2017, Vafi was inside her car waiting for a traffic light to change when she was struck by a vehicle driven by an underinsured driver. Vafi suffered bodily injuries as a result. Following the accident, Vafi was paid $50,000 by the driver's insurer for the driver's policy limits. Vafi then filed a claim with her own insurer, Liberty Mutual, under a personal automobile liability policy that included coverage for uninsured and underinsured motorists ("UIM").

The UIM coverage in Vafi's automobile policy contained a limit of $500,000 per accident. Liberty Mutual agreed to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' [or underinsured motor vehicle] because of: [¶] 1. 'Bodily injury' sustained by an 'insured' and caused by an accident, and [¶] 2. 'Property damage' caused by an accident . . . . With respect to coverage [for accidents caused by underinsured motor vehicles], we will pay only after the limits of liability under any liability bonds or policies applicable to the 'uninsured motor vehicle' have been exhausted by payment of judgments or settlements." The policy also reduced Liberty Mutual's

3

obligation to pay Vafi for sums it would have already paid under Vafi's medical payment coverage, and for any sums paid or payable by those legally responsible for causing a car accident.

The UIM coverage in Vafi's automobile policy also contained an arbitration provision, which stated: "If we and an 'insured' do not agree: [¶] 1. Whether that person is legally entitled to recover damages under this coverage; or [¶] 2. As to the amount of damages; then the matter will be settled by arbitration. . . . Disputes concerning coverage under this part may not be arbitrated. [¶] . . . [¶] Any decision of the arbitrator will be binding as to: [¶] 1. Whether the 'insured' is legally entitled to recover damages; and [¶] 2. The amount of damages."

Following several attempts at settling her UIM claim with Liberty Mutual, Vafi formally demanded arbitration under the automobile policy on September 25, 2019.

B.   *Arbitration Phase*

The parties participated in arbitration beginning April 16, 2020, and continuing for a half-day on May 1, 2020. The arbitrator (the Honorable Jacqueline A. Connor, retired), issued her award on May 19, 2020. The award specified that the "matters at issue [were] the nature and extent of Ms. Vafi's injuries and damages." Citing Insurance Code section 11580.2,[2] the award provided that the "'damages' recoverable by

---

[2]     The Uninsured Motorist Act (Ins. Code, § 11580.2 et seq.) requires auto insurance policies to provide UIM coverage for motorists whose liability insurance is less than the limits carried on the injured motorist's insurance

4

the insured refers to the damages recoverable from the uninsured or underinsured motorist. . . . It does not refer to the amount recoverable by the insured from his or her insurer under the [UIM] policy."

After summarizing the testimony presented during the arbitration proceeding and making its own findings concerning Vafi's bodily injuries and damages, the arbitrator found "that the past economic damages . . . totaling $35,983.42, were reasonable and attributable to the accident. . . . [T]he need for continuing future monitoring and physical therapy are awarded to [Vafi] in the amount of $100,000. Past general damages to date are awarded in the amount of $100,000. . . . [F]uture general damages in the amount of $100,000 are also awarded. The total amount awarded is $335,983.42."

Around June 2020, Liberty Mutual tendered a check to Vafi for $271,335.66—a number it had calculated after deducting from the arbitration award ($335,983.42) offset credits for Vafi's third-party settlement ($50,000), and medical expenses Liberty Mutual had paid under Vafi's medical payment coverage ($14,647.76).

In a June 23, 2020 letter to the arbitrator, Vafi requested clarification as to whether she was "entitled to the full amount of the award or is Liberty Mutual entitled to reduce the award by taking the [offset] credit[s] even though no such evidence was introduced by them

plan. (*Id.*, § 11580.2, subd. (p)(2).) As used in Insurance Code section 11580.2, the term "damages" refers to "bodily injury or wrongful death from the owner or operator of an uninsured [or underinsured] motor vehicle." (*Id.*, § 11580.2, subd. (a)(1).)

at the time of the arbitration." In its own letter to the arbitrator, Liberty Mutual noted that it was contractually entitled to offset its payment for the third-party settlement and medical payment coverage.

On July 6, 2020, the arbitrator issued a ruling upholding the award as submitted. The arbitrator construed Vafi's request as a motion to correct the award, which was beyond the jurisdictional 10-day timeframe. (See § 1284.)[3] The arbitrator also noted that the issue of offsets "was not requested nor articulated orally in the hearing or in any of the briefs."

Two days later, Vafi requested that the arbitrator reconsider her ruling. The arbitrator again denied Vafi's request, this time noting that she no longer had jurisdiction to make any change or correction. (See § 1284 [an arbitrator may correct an award no later than 30 days after service of a signed copy of the award on the applicant seeking correction].)

C.    *Post-Arbitration Phase*

On July 23, 2020, Liberty Mutual filed a petition to correct and confirm the arbitration award under section 1286.6, subdivisions (b) and (c).[4] The petition requested that the court confirm that the "award

---

[3]    Under section 1284, a party may submit an application to "correct" an award "not later than 10 days after service of a signed copy of the award on the applicant" seeking a correction.

[4]    A party to an arbitration in which an award has been made may petition the court to confirm, correct, or vacate the award. (§ 1285.)

As provided in section 1286.6, the grounds for the correction of an award include "(b)  The arbitrators exceeded their powers but the award may

of $335,983.42 was *and is exclusive of contractual and statutory offsets.*"
In support, Liberty Mutual argued that under the terms of Vafi's policy,
it was entitled to offset the third-party settlement and payments it had
made on behalf of Vafi under the medical payments coverage.

In her opposition, Vafi argued that no grounds for the correction of
an arbitration award existed under section 1286.6, "and thus the [c]ourt
must confirm the award as rendered." Vafi further argued that because
setoffs were "[p]art and parcel of her damages," and because the parties
"did not stipulate to remove the issue of setoffs from arbitration,"
Liberty Mutual's right to setoffs was an issue to be decided in the
arbitration. Vafi also asserted that she had not received $14,647.76 for
prior medical expenses as alleged by Liberty Mutual.[5]

Relying on *Furlough v. Transamerica Ins. Co.* (1988) 203
Cal.App.3d 40 (*Furlough*) in its reply brief, Liberty Mutual argued that
the trial court had authority under section 1286.6 to correct the
arbitration award, which "embrace[d] matters outside the arbitration
agreement." Liberty Mutual also argued it did not waive its offset
rights by the failure to introduce evidence at the arbitration, as the
parties had never stipulated to expand the scope of the arbitrator's

---

be corrected without affecting the merits of the decision upon the controversy
submitted;" and "(c) The award is imperfect in a matter of form, not affecting
the merits of the controversy."

[5]    Vafi alleged that she had only received $8,166.76 under the medical
payment coverage.

powers beyond those enumerated in Insurance Code section 11580.2, subdivision (f).

The trial court held a hearing on the matter on January 28, 2021. At the outset, the court informed Liberty Mutual that it had presented "no authority that the court can clarify an arbitration award that was— or consider evidence that was not put in front of the arbitrator." Liberty Mutual responded that its request fell under section 1286.6, subdivision (c), because "the award is imperfect. We're not asking the merits of the award or the outcome of the award be changed in any way. All we're asking for is a clarification."

After taking the matter under submission, the court issued an order denying Liberty Mutual's petition to correct the arbitration award, and confirming the award. The court noted that it was not at all clear in what manner the award was imperfect. The court continued: Assuming Liberty Mutual was correct that the "issue of offsets is outside the scope of the arbitration and the only issue submitted to arbitration was the amount of damages [Vafi] suffered, . . . [Liberty Mutual] still did not submit legal authority allowing the [c]ourt to modify or clarify an arbitration award. Having told the arbitrator that it would be error for the arbitrator to clarify the award and that no clarification or modification was needed, [Liberty Mutual] does not explain how—or provide legal authority that—the [c]ourt can do what [Liberty Mutual] said the arbitrator could not do." The court noted that adding the additional language requested by Liberty Mutual was not merely a matter of correcting an award that was imperfect in form and that did not affect the merits of the arbitration award.

8

On February 18, 2021, the court entered judgment in favor of Vafi for $335,983.42 "as the prevailing party in this action against" Liberty Mutual. Liberty Mutual timely appealed.

**DISCUSSION**

The issue in this appeal is whether the trial court had the authority under section 1286.6 to "correct" the arbitration award with language clarifying that the "award . . . was *and is exclusive of contractual and statutory offsets*." We conclude that the trial court in this case was correct in ruling it did not have that authority. The scope of the arbitration was limited to determining whether Vafi was entitled to recover an amount of "damages" as that term was used in her policy and is understood in Insurance Code section 11580.2. (See *Storm v. Standard Fire Ins. Co.* (2020) 52 Cal.App.5th 636, 643–644; *Bouton v. USAA Casualty Ins. Co.* (2008) 43 Cal.4th 1190, 1197, 1200.) It did not include the matter of potential offsets.

A.      *Judicial Review of Arbitration Awards*

An arbitration award under a UIM policy has the force and effect of a contract between the parties until it is vacated or confirmed with a judgment entered in conformity therewith. (See §§ 1287.4, 1287.6; *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 765; *Pilimai v. Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133, 141.) To obtain a correction of an arbitration award before it is confirmed, a party must

9

file a petition with the trial court setting forth the statutory grounds on which the correction is sought. (See §§ 1285, 1285.8.)

A court's review of an arbitration award is expressly limited to the statutory grounds for vacating an award under section 1286.2, or correcting an award under section 1286.6. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 33 (*Moncharsh*); see *Branches Neighborhood Corp. v. CalAtlantic Group, Inc.* (2018) 26 Cal.App.5th 743, 750 [judicial review is "'extremely narrow'" because of "'the strong public policy in favor of arbitration and according finality to arbitration awards'"].)

The "exclusive means" for correcting an arbitration award appear in section 1286.6. (*Moncharsh*, *supra*, 3 Cal.4th at pp. 24, 28; *M. B. Zaninovich, Inc. v. Teamster Farmworker Local Union 946* (1978) 86 Cal.App.3d 410, 416.) As relevant here, section 1286.6 provides that the court "shall correct the award and confirm it as corrected if the court determines that: [¶] . . . [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy." Section 1286.6 does not authorize a court to reconsider the merits of the original award, make a new award under the guise of correction of the award, or add a new element of damages not covered in the award as rendered. (*Landis v. Pinkertons, Inc.* (2004) 122 Cal.App.4th 985, 992; *Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 93, 95.) Section 1286.6 does not authorize "a revision in substance" in which a court "add[s] an element of damages not covered . . . in the award as rendered." (*Banks v. Milwaukee Ins. Co.* (1966) 247 Cal.App.2d 34, 37 (*Banks*).)

Whenever a party files a petition to confirm, correct, or vacate an arbitration award, the trial court must confirm the award, correct the award and confirm it as corrected, vacate the award, or dismiss the proceeding. (§ 1286; *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1085.)

We review the trial court's order confirming the arbitration award de novo to determine whether the award can be corrected under the grounds listed in section 1286.6. (See *EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058, 1063–1064; *Glaser, Weil, Fink, Jacobs & Shapiro, LLP v. Goff* (2011) 194 Cal.App.4th 423, 433.)

B.    *No Statutory Ground Exists to Correct the Arbitration Award*

Relying on subdivision (c) of section 1286.6, and *Furlough, supra,* 203 Cal.App.3d 40, Liberty Mutual contends that the court, through a petition to correct an arbitration award, can "confirm the correctness of the payment it tendered to Vafi as calculated by the Arbitration Award minus the . . . offsets to which Liberty Mutual is entitled."[6] In other words, Liberty Mutual contends that under section 1286.6, the court could modify the award by adjudicating a coverage dispute never considered by the arbitrator. Liberty Mutual is mistaken.

---

[6]    In the trial court, Liberty Mutual argued that the court could correct the arbitration award on two statutory grounds: subdivisions (b) and (c) of section 1286.6. Liberty Mutual does not raise subdivision (b) of section 1286.9 on appeal, and that subdivision is therefore not in issue.

11

Subdivision (c) of section 1286.6 provides for the correction of an award that is "imperfect in a matter of form, not affecting the merits of the controversy."  Notably absent from Liberty Mutual's briefing is any discussion or citation to relevant legal authority addressing section 1286.6, subdivision (c).  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority," we may treat the point as forfeited.  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852; see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [courts may treat as forfeited "'conclusory arguments that . . . fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt'"].)  Liberty Mutual has thus forfeited this argument on appeal.

Even on the merits, Liberty Mutual's argument fails.  Under subdivision (c) of section 1286.6, correction of an arbitration award can be made only for "*nonsubstantive* matters of form that do *not* affect the merits of the controversy."  (*Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865, 877.)  Several cases that have utilized subdivision (c) to correct an arbitration award have done so to clarify issues that had already been adjudicated during the arbitrator.

In *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085 (*Britz*), the parties agreed to arbitrate a large sale and lease contract for miscellaneous plant equipment and machines.  (*Id.* at p. 1090.)  The arbitrator issued an interim award in favor of the defendants on liability in January 1992, and a final award in their favor

12

in the amount of $587,425, "plus costs and attorney fees in an unspecified amount" in March 1993. (*Id.* at p. 1091.) "After additional submissions by the parties, the arbitrator . . . issued a supplemental award of $1,412,953.75 for [the defendants'] attorney fees and $696,747.45 as costs." (*Ibid.*)

On appeal from a judgment confirming the arbitration award including attorney fees and costs, the plaintiffs contended, inter alia, that the arbitrator did not have jurisdiction to issue the supplemental award for attorney fees and costs. (*Britz, supra,* 34 Cal.App.4th at pp. 1093, 1105.) The court rejected the contention, and reasoned that because the arbitrator's January 1992 award *did* award attorney fees and costs, the failure "to establish an exact dollar amount for the award of fees and costs . . . is at most a defect in the form of the award" under section 1286.6, subdivision (c). (*Id.* at pp. 1105–1106.) In other words, the court found the omission of an exact dollar figure amount for an award of attorney fees and costs constituted a non-substantive matter of form subject to correction. (*Ibid.*)

In *Krautner v. Johnson* (1961) 189 Cal.App.2d 717 (*Krautner*), an arbitrator issued an award in favor of the plaintiffs for "sums claimed due therefor" for constructing a residence for the defendant. (*Id.* at p. 718.) The original award stated that the plaintiffs "'have substantially completed the [construction] contract and are entitled to the sum of $3,880.00, the total amount due under the written contract.'" (*Ibid.*) This quoted language was "marked out, initialed by all arbitrators, and the words 'We find that the amount of the last payment

13

unpaid under the basic contract was the amount of $3,880.00' were added to the next paragraph and similarly initialed. Apparently this form was forwarded to the parties, but before filing of the award with the court, the page was retyped so as to show only the corrected form." (*Ibid.*)

On appeal from an order confirming the amended award, the defendant contended that the alteration "vitiate[d] it." (*Krautner, supra,* 189 Cal.App.2d at p. 718.) The court disagreed, reasoning that "the alteration, even if made after furnishing of copies to the parties, is one of form only. It would be hypertechnical to hold that it voids the award. [The] alteration was even more clearly but one of form, rather than substance." (*Id.* at p. 719.)

The foregoing cases used subdivision (c) of section 1286.6 to correct an arbitration award on issues that had already been adjudicated by the arbitrators. (See *Britz, supra,* 34 Cal.App.4th at pp. 1105–1106 [correction made to specify a dollar figure amount for an award the arbitrator had already adjudicated]; *Krautner, supra,* 189 Cal.App.2d at pp. 718–719 [correction made to rephrase a portion of an award to more accurately reflect the grounds on which the arbitrator adjudicated an issue].)

The correction sought by Liberty Mutual in this case pertains to an issue that was never placed before the arbitrator. Indeed, throughout the entirety of this litigation, Liberty Mutual has maintained that the arbitrator did not, *and could not*, adjudicate a coverage dispute under Vafi's policy. Granting the relief requested by

14

Liberty Mutual would first require the judicial adjudication of a new issue before supplementing the arbitration award under the guise of a "correction."

This type of judicial intervention is a not a correction of a matter of form in an award, but "a revision in substance," requiring a recalculation of damages not covered in the award as rendered. (*Banks, supra,* 247 Cal.App.2d at p. 37.) Modifying the arbitration award to implement the offset provisions of the policy would reduce Liberty Mutual's liability to Vafi, and would subject the entire award to vacation. (See *Elliott & Ten Eyck Partnership v. City of Long Beach* (1997) 57 Cal.App.4th 495, 501–503; *Krautner, supra,* 189 Cal.App.2d at pp. 718–719 ["[a] change in substance would require vacation of the award . . . if it resulted in prejudice to either party"].)

Liberty Mutual's reliance on *Furlough, supra,* 203 Cal.App.3d 40, is equally misplaced. *Furlough* relied on section 1286.6, subdivision (b),[7] a statutory ground not asserted by Liberty Mutual in this appeal. (See *id.* at pp. 46–47.) The circumstances under which *Furlough* was decided are also distinguishable.

In *Furlough*, the plaintiff was injured by a hit-and-run driver while driving a tractor-trailer rig that had been covered by various auto policies with the defendant-insurer. (*Furlough, supra,* 203 Cal.App.3d at p. 43.) The primary policy, which included UIM coverage with a limit

---

[7]     Section 1286.6, subdivision (b), not in issue in this appeal (see fn. 6, *ante*), provides for the correction of an award if the arbitrator "exceeded [its] powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted."

of $300,000 per accident, was supplemented by two additional policies: (1) a personal umbrella policy, which provided UIM coverage of $25,000 maximum per accident; and (2) a $1 million commercial umbrella policy, which did not mention UIM coverage. (*Ibid.*) In his demand for arbitration, plaintiff sought $1.3 million in damages, and asserted the commercial umbrella policy provided a $1 million limit for UIM coverage limit beyond the $300,000 limit under primary policy. (*Id.* at p. 44.) Following arbitration proceedings, the arbitrator "rendered an award ordering [the insurer] to pay [the plaintiff] $744,695 'as general damages under the uninsured motorist provision on the policy.'" (*Ibid.*)

In response to the plaintiff's petition to confirm the arbitration award, the insurer sought to correct the award to $325,000, representing the policy limits for UIM coverage. (*Furlough*, *supra*, 203 Cal.App.3d at p. 44.) In seeking a correction, the insurer argued that the arbitrator had "exceeded his powers by making an award in excess of the applicable policy limits." (*Ibid.*) The trial court agreed, and determined that the "commercial umbrella policy [did] not provide [UIM] coverage; such coverage is limited to $325,000 as provided by the primary policy and the personal umbrella policy." (*Ibid.*) The court entered judgment reducing the award to $325,000, and confirmed the award as corrected. (*Ibid.*)

On appeal, the plaintiff contended that the parties had in fact submitted to arbitration the question of policy limits, and "therefore the award, which in effect determined that such coverage was afforded by

16

the commercial umbrella policy, is binding." (*Furlough*, *supra*, 203 Cal.App.3d at p. 46.) The court rejected the plaintiff's argument.

The court first noted that "[t]he record on appeal does not include the papers purportedly submitted in the arbitration proceeding upon which the [plaintiff's] argument was based. Further, the trial court issued no statement of decision, none having been requested. (Code Civ. Proc., § 632.) Under these circumstances it must be presumed in support of the judgment that the trial court resolved against [the plaintiff] the issue of the parties' claimed submission of coverage and policy limits to arbitration." (*Furlough*, *supra*, 203 Cal.App.3d at p. 46.) The court continued: "An arbitration award which embraces matters outside the agreement and not submitted to the arbitrator is subject to modification under Code of Civil Procedure section 1286.6, subdivision (b). (See *Meat Cutters Local No. 439 v. Olson Bros.* (1960) 186 Cal.App.2d 200, 204; *Doyle v. Hunt Construction Co.* (1954) 123 Cal.App.2d 51, 54.) The trial court impliedly determined that the issue of the extent of [UIM] coverage was not submitted to the arbitrator and therefore such issue was before the court for determination. (See *Allstate Ins. Co. v. Shmitka* [(1970)] 12 Cal.App.3d 59, 63.)" (*Furlough, supra,* at pp. 46–47, fn. omitted.) Therefore tasked with resolving this issue in the arbitration award, the court in *Furlough* held that a correction was required to reduce the plaintiff's recovery from the insurer to $325,000, as reflected as the UIM limits provided in the primary policy and supplemented personal umbrella policy. (*Furlough, supra,* 203 Cal.App.3d at p. 47.)

Liberty Mutual contends that *Furlough* "confirm[s] the validity of its post-arbitration requests for offsets," as that case "implement[ed] Section 1286.6 to modify an arbitration award to reflect the amount an insurer is obligated to pay." Liberty Mutual reads *Furlough* much too broadly. Absent from *Furlough* is any discussion on the issue of contractual or statutory offsets for UIM coverage. Rather, the court's analysis was limited to determining whether the arbitration award ordering the insurer to pay the insured $741,795 "embrace[d] matters outside the agreement," as the amount ordered was *in excess* of the policy limits providing UIM coverage, but *less than* the policy limits of all three policies. In other words, the court determined that the arbitration award was subject to correction under section 1286.6, subdivision (b), because it adjudicated a coverage issue that was never submitted for arbitration.

The circumstances in this case are different. Here, the arbitration proceedings were mandated under only one policy with UIM policy limits of $500,000 per accident. The amount listed in the arbitration award ($335,983.42) was in an amount *less than* the policy limit. The arbitrator did not order Liberty Mutual to pay that specific amount, and as discussed *ante*, the arbitrator was not asked to and did not rule on any issue of coverage. Thus, under the reasoning of *Furlough*, the arbitrator in this case never determined a coverage issue or policy limit in excess of her powers. *Furlough* simply does not apply to the facts before us.

Thus, because no statutory ground exists under section 1286.6 to correct the arbitration award, we conclude that the court properly denied Liberty Mutual's petition to correct the arbitration award, and correctly confirmed the award as final. (§ 1286.) As we shall now discuss, however, Liberty Mutual is not without a remedy.

As raised for the first time at oral argument, counsel for Vafi contends that the judgment entered in this case has "forfeited" Liberty Mutual's right to file a declaratory relief action to determine whether it can offset its coverage to Vafi. To begin with, this new argument cannot be raised for the first time in oral argument. (*People v. Pena* (2004) 32 Cal.4th 389, 403; *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 854.) Even on the merits, counsel has not demonstrated how a party may forfeit its right to file a cause of action to determine an issue neither litigated nor determined in a prior action. To the extent counsel argues the judgment is res judicata as to any future cause of action to determine scope of coverage issues, he is mistaken. (See *Helfand v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 869, 896 [res judicata inapplicable to judgment confirming arbitration award that "did not impact or determine rights as between the insurer and its insureds"]; *Sandler v. Casale* (1981) 125 Cal.App.3d 707, 713 ["the binding res judicata effect of the confirmed award" did not bar declaratory relief action to determine the parties' rights and duties under the judgment].)

## DISPOSITION

The order is affirmed. Respondent shall recover her costs on appeal.

19

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                          WILLHITE, J.

We concur:



MANELLA, P. J.



COLLINS, J.